THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Jane Agnew Brown, Izetta Pruitt Agnew, Timothy Wigington Agnew, Thomas Simpson Agnew, Rebecca Ann Girardieau, All individually and as Trustees for Thomas Simpson Agnew as Guardian of John Pruitt Agnew, Respondents,
 v.
 Susan Agnew Worthington and James Hugh Agnew, Defendants,
 Of Whom Susan Agnew Worthington is Respondent
 And James Hugh Agnew is the Appellant.
 
 
 

Appeal From Anderson County
 Ellis B. Drew, Jr., Master-In-Equity
Unpublished Opinion No. 2007-UP-343
Submitted June 1, 2007  Filed June 29, 2007
AFFIRMED

 
 
 
 Stephen G. Potts and Carolyn G. Baird, both of Anderson, for Appellant.
 Bernie Wellington Ellis and James A. Blair, III, both of Greenville and Susan Agnew Worthington, of Piedmont, for Respondents.
 
 
 

PER CURIAM:  Appellant, James Hugh Agnew (James), appeals the master-in-equitys order granting summary judgment on Respondents motion for partial summary judgment.  James also appeals the masters order denying his partial summary judgment motion and motion to amend his answer, counterclaim and cross-claim.  We affirm.[1] 
FACTS
On August 14, 1995, J.C. Pruitt Agnew (Pruitt), Janie May S. Agnew (Janie), and their eight children formed The Agnew Family Limited Partnership (Partnership) pursuant to The Agnew Family Limited Partnership Agreement (Partnership Agreement).[2]  Pruitt and Janie transferred certain real estate they owned to the Partnership.  
 
The Partnership was structured to have one thousand total units, ten general partner units, and 990 limited partner units.  Initially, Pruitt held six general partner units and 495 limited partner units, Janie held four general partner units and 495 limited partner units, and the children owned no Partnership units.  Both Pruitt and Janie made gifts of limited partner units to their eight children in 1995, 1996, 1997, and 1998.  As of March 4, 1998, each child owned fifty-four limited partner units and Pruitt and Janie each owned 279 limited partner units.  The ownership of general partner units remained the same until Janies death on August 25, 1998, when her general partnership units passed to Pruitt under her will.
On June 7, 1999, Pruitt executed a document assigning one general partnership unit and 2.25 limited partnership units each to Jane Agnew Brown (Jane), Thomas Simpson Agnew (Tom), Izetta Pruitt Agnew (Izetta), and James.[3]  However, on the same day, Pruitt executed a document, Clarification of Ownership of Agnew Family Limited Partnership Interests, reflecting that Izetta and James had not accepted the general partnership units Pruitt had attempted to transfer them, had refused to sign the amendment to the certificate of limited partnership, and would receive limited partnership units instead.  Schedule B of the Partnership Agreement as of 6/7/99 indicate the general partners of the Partnership were Pruitt, who held eight general partnership units, and Jane and Tom, who each held one general partnership unit.  An amendment to the certificate of limited partnership was filed with the Secretary of State on March 9, 2000, reflecting that Jane and Tom were added as substitute general partners to the Partnership.
 
On August 1, 2000, Pruitt assigned his remaining general partnership units to Jane and Tom, who each received four units.  Schedule B of the Partnership Agreement as of 8/1/00 reflect the general partners of the Partnership were Jane and Tom, who each held five general partnership units.  An amendment to certificate of limited partnership was filed with the Secretary of State on August 18, 2000, indicating Pruitts withdrawl as a general partner.  Pruitt died on January 11, 2002, having transferred all of his units in the Partnership to his children. 
 
On July 1, 2003, Jane, Izetta, Tom, Timothy Wigington Agnew, Rebecca Ann Girardeau, and John Pruitt Agnew (the Plaintiffs) filed an action for the partition and sale of real estate against James and Susan Agnew Worthington.[4]  James filed an answer, counterclaim and cross-claim which sought dissolution of the Partnership and an accounting of partnership activities and transactions by Jane and Tom.  James was allowed to file an amended answer, counterclaim and cross-claim, which sought the same relief, but contained additional allegations.  The case was referred to the master-in-equity.  
 
Plaintiffs, less Izetta, (Respondents) filed a motion for partial summary judgment asking the court to find that neither James nor Izetta are general partners of the Partnership.  James filed a cross-motion for partial summary judgment asking the court to find that there are no general partners of the Partnership.  James also filed a motion to amend his answer, counterclaim and cross-claim to conform to proof regarding his cross-motion for partial summary judgment.  Izetta did not file a pleading in the case, but submitted an affidavit in opposition to both motions for partial summary judgment.
At the hearing on the motions, Respondents offered the affidavit of Kenneth B. Wingate, the attorney who prepared all of the Partnership documents.  The affidavit stated James refused to accept a general partnership unit because he did not want the liability associated with being a general partner.  Further, the affidavit explained because James and Izetta would not sign a certificate of amendment acknowledging their position as general partner, as required by statute, Pruitt assigned one general partner unit to only Jane and Tom.  James claimed he did not refuse to accept a general partnership unit and was never asked to sign any document relating to the assignment of general partnership units.[5] Alternatively, James argued there are no general partners because Pruitt failed to follow the terms of the Partnership Agreement when he appointed Jane and Tom as general partners.  According to James interpretation of the Partnership Agreement, to appoint new or substitute general partners the limited partners of the Partnership had to be notified and consent to such appoint.  Thus, James avers because he, as a limited partner, never consented to the appointment of Jane and Tom, after Pruitt transferred his general partnership shares and withdrew as general partner, there was no longer a general partner of the Partnership.
The master granted partial summary judgment on Respondents motion finding James is not a general partner but denying partial summary judgment on Respondents motion regarding Izetta.[6]  The master found James did not meet any of the statutory requirements for recognition as a general partner.  The master further denied James motion for partial summary judgment, finding he was barred by the doctrine of estoppel and laches because he waited too long to raise his no general partner argument.  The master also denied James motion to amend his answer, counterclaim and cross-claim.  James filed a motion to reconsider, alter, or amend the masters order.  A hearing was held on January 17, 2006, at which time the master denied James motion.  This appeal follows.
STANDARD OF REVIEW
When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the circuit court under Rule 56(c), SCRCP.  Helms Realty, Inc. v. Gibson Wall Co., 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005).  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as matter of law.  Redwend Ltd. Pship v. Edwards, 354 S.C. 459, 467-68, 581 S.E.2d 496, 500-501 (Ct. App. 2003);  Rule 56(c), SCRCP.  In determining whether any triable issues of fact exist, the evidence and all inferences must be viewed in the light most favorable to the non-moving party.  Jones v. State Farm Mut. Auto. Ins. Co., 364 S.C. 222, 227, 612 S.E.2d 719, 722 (Ct. App. 2005).  Nonetheless, a court cannot ignore facts unfavorable to that party and must determine whether a verdict for the party opposing the motion would be reasonably possible under the facts.  Bloom v. Ravoira, 339 S.C. 417, 423, 529 S.E.2d 710, 713 (2000) (citations omitted). 
 
LAW/ANALYSIS
James appeals the grant of summary judgment in favor of the Respondents, which found James is not a general partner of the Partnership.  James claims the June 7, 1999 assignment of partnership interest signed by Pruitt clearly indicates James is a general partner and, thus, there is a genuine issue of material fact as to whether he refused to accept the assignment of a general partnership interest.  James avers the master gave more weight to the evidence provided by the Respondents rather than reviewing the evidence in a light most favorable to James.  We disagree.
In order to form a limited partnership in South Carolina, a certificate of limited partnership must be executed and filed in the office of the Secretary of State.  S.C. Code Ann. §33-42-210(a) (2006).  The certificate must set forth: (1) the name of the limited partnership; (2) the address of the office and name and address of the agent for service of process; (3) the name and mailing address of each general partner; (4) the latest date upon which the limited partnership is to dissolve; and (5) any other matters the partners determine to include.  Id.  A limited partnership is a partnership consisting of two or more limited partners and one or more general partners.  S.C. Code Ann. §33-42-20(7) (2006.  A General Partner means a person who has been admitted to a limited partnership as a general partner in accordance with the partnership agreement and named in the certificate of limited partnership as a general partner.  S.C. Code Ann. § 33-42-20(5) (2006). 
 
The certificate of limited partnership is amended by filing a certificate of amendment in the office of the Secretary of State.  S.C. Code Ann. §33-42-220(a) (2006).  Within thirty days after the admission or withdrawal of a general partner a certificate of amendment must be filed.  S.C. Code Ann. §33-42-220(b) (2006).  A certificate of amendment designating a new or substitute general partner must be signed by at least one general partner and by each other general partner designated in the certificate as a new or substitute general partner.  S.C. Code Ann. §33-42-240 (2006). 
 
In this case, the original certificate of limited partnership, executed and filed in the office of the Secretary of State on September 21, 1995, indicates Pruitt and Janie as sole general partners.  In accordance with the statutory requirements, a certificate of amendment was executed and filed in the office of the Secretary of State after Janies death to indicate the withdrawal of Janie as a general partner and the admission of Jane and Tom as general partners.  The certificate of amendment was signed by Pruitt, as the one general partner, and Jane and Tom, as the general partners designated in the certificate.
While Pruitt executed an assignment of partnership interests, on July 7, 1999, indicating an attempt to assign one general partner unit to Jane, Tom, Izetta and James, he executed a clarification of assignment of partnership interest on the same day.  The clarification indicates that only Jane and Tom accepted the general partner units and that Izetta and James would receive limited partner units instead.  Also, as provided in Section 5.6 of the Partnership Agreement entitled Partnership Interest,[7] the percentage of partnership interests from June 7, 1999 to August 1, 2000 indicate Jane and Tom as general partners and James as a limited partner.  
 
Further, Pruitt executed another assignment of partnership interests on August 1, 2000, transferring four general partner units each to Jane and Tom.  On August 18, 2000, a certificate of amendment was executed and filed in the office of the Secretary of State indicating Pruitts withdrawl as a general partner and the intent of the Partnership to continue without dissolving.  The certificate is signed by the remaining general partners, Jane and Tom.
 
While James argues he never refused to accept the assignment of a general partnership unit and offers Izettas affidavit stating she never refused to accept the assignment of a general partnership unit, the overwhelming evidence and documents indicate that the general partner units were never officially assigned to James.  Whatever the reason, Pruitt ultimately decided not to appoint James as a general partner, and the final step of amending the certificate of limited partnership was not taken as to James.  Although we are bound to review the record in a light most favorable to James, we cannot ignore facts unfavorable to him.  See e.g. Bloom v. Ravoira, 339 S.C. 417, 423, 529 S.E.2d 710, 713 (2000).  Therefore, we find the grant of summary judgment in favor of Respondents was proper.
James also appeals the denial of his cross-motion for partial summary judgment and the denial of his motion to amend his answer, counterclaim, and cross-claim.  It is well settled that the denial of a motion for summary judgment is not appealable.  Olson v. Faculty House of Carolina, Inc., 354 S.C. 161, 168, 580 S.E.2d 440, 444 (2003); see also Joyner v. Greenville Assocs Ltd. Pship, 364 S.C. 237, 240, 612 S.E.2d 727, 728 (Ct. App. 2005) (declining to address the denial of appellants motion for summary judgment).  Similarly, it is well settled that an interlocutory order, such as an order denying a motion to amend pleadings, is not immediately appealable unless it involved the merits of the case or affects a substantial right.  S.C. Code Ann. §14-3-330 (Supp. 2006); see also Tatnall v. Gardner, 350 S.C. 135, 138, 564 S.E.2d 377, 379 (Ct. App. 2002) (order denying motion to amend pleadings to assert third party claims was not immediately appealable because the order did not determine a substantial matter forming the whole or part of some cause of action).  Thus we decline to address James arguments that the master erred by failing to grant him partial summary judgment and by failing to grant him leave to amend his answer, counterclaim, and cross-motion.
Based on the foregoing, the grant of partial summary judgment is
AFFIRMED.
ANDERSON, HUFF, and BEATTY, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] The Partnerships Certificate of Limited Partnership was filed with the South Carolina Secretary of State on September 21, 1995.  
 
[3] Pruitt also assigned 3.25 limited partnership units to his four remaining children.  
[4] The partition action was resolved by Order dated December 14, 2004 and is not before this court.  
 
[5] Izetta also submitted an affidavit declaring she had never been asked to sign a document accepting a general partnership unit. 
 
[6] The master denied the motion as to Izetta because she had not filed a pleading in the action, only a response to the pending motions.  Thus, the master found her status, including whether she deliberately chose not to be a general partner, was a matter in which further inquiry into the facts of the case is desirable to clarify the application of the law, citing Brockbank v. Best Capital Corp., 341 S.C. 372, 378, 534 S.E.2d 688, 692 (2000).  
[7] Section 5.6 reads, Each partners percentage of partnership interest is the percentage reflected in Schedule B. as amended from time to time.